IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

NICOLE LEIGH POWELL                                                                  PLAINTIFF

v.                            NO. 4:14-cv-00094 HDY

CAROLYN W. COLVIN, Acting Commissioner                                               DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicole Leigh Powell ("Powell") commenced this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

The ALJ found that Powell, who was twenty-four years old on the day of the administrative hearing, has severe impairments in the form of a seizure disorder, depression, and anxiety but retains sufficient residual functional capacity to perform a full range of work at all exertional levels, although she does have certain non-exertional limitations. The ALJ found that Powell has no past relevant work, but there are jobs she can perform. He concluded that she has not been under a disability at any time since June 28, 2011, that being, the day she filed her application for supplemental security income payments. Her application was therefore denied.

Powell maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers two reasons why. Powell first maintains that her residual functional capacity was not properly assessed. Although she offers several grounds to support her assertion, she primarily maintains that the ALJ accorded too much weight to the findings and conclusions made by a consultative examiner, Dr. Kenneth Hobby, Ph.D., ("Hobby"), and too little weight to the findings and conclusions made by a therapist and an advanced practice nurse at Professional Counseling Associates ("PCA").

The ALJ is obligated to assess the claimant's residual functional capacity, which is simply a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). In making the assessment, the ALJ is obligated to consider the opinions of a treating physician and give them controlling weight if they are supported by "medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted). The ALJ may discount or even disregard the opinions if "other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of [his] opinions." See Id. (internal quotations omitted).

The ALJ assessed Powell's residual functional capacity and found that she retains

sufficient residual functional capacity to perform a full range of work at all exertional levels, although she does have the following non-exertional limitations:

> … The claimant cannot work in a work setting that exposes her to unprotected heights, moving machinery, or open flames. She is able to perform work where interpersonal contact is incidental to the work performed. … The complexity of the claimant['s] job tasks must be able to be learned by demonstration or repetition within 30 days, with few variables, little judgment, and her supervision must be simple, direct, and concrete.

See Transcript at 17. In making the foregoing findings, the ALJ considered the medical evidence and gave great weight to the findings and conclusions made by Hobby. The ALJ did not specifically discount the findings and conclusions made by the PCA therapist and advanced practice nurse but construed their progress notes to reflect that Powell's condition improved with appropriate medication and treatment. The ALJ also considered the non-medical evidence, evidence he believed to undermine Powell's credibility.

The ALJ's assessment of Powell's residual functional capacity is supported by substantial evidence on the record as a whole. He adequately considered the medical evidence, and he could and did give great weight to the findings and conclusion made by Hobby as they are consistent with "[Hobby's] examination of [Powell] and [her] history." See Transcript at 21. The ALJ could also construe the progress notes from the PCA professionals as he did. The ALJ also considered the non-medical evidence, and his evaluation of it is one of the acceptable evaluations permitted by the record.

The medical evidence reflects that Powell has suffered for a number of years from

mental impairments, the precise description of which have not always been a model of consistency. They have at different times been identified as depression, a depressive disorder, anxiety, social anxiety, a post-traumatic stress disorder, an adjustment disorder with mixed disturbance of emotion and conduct, a borderline personality disorder, a relational disorder, a mood disorder, and a bipolar disorder. See Transcript at 31, 200, 215, 234, 238-239, 243, 262, 265. The problems her mental impairments cause, or have caused, are exacerbated by other factors, including her occasional abuse of alcohol and illegal drugs and conflicts with her family and boyfriend. See Transcript at 37, 200, 236-238, 241-242, 250-251, 260-261, 264.

The medical evidence pre-dating Powell's June 28, 2011, application for supplemental security income payments is scant. The only such evidence is a PCA intake screening report dated December 4, 2002, see Transcript at 264-265; a PCA psychiatric evaluation of Powell dated February 18, 2003, see Transcript at 260-263; and a "To Whom It May Concern" letter dated July 20, 2006, from a counselor at Rivendell Behavioral Health Services ("Rivendell"), see Transcript at 200. The documents provide little insight into the work-related restrictions caused by Powell's mental impairments as the documents were prepared years before she filed her application for supplemental security income payments.[1]

The most recent of the three documents, the "To Whom It May Concern" letter,

---

[1] For instance, the PCA intake screening report and the PCA psychiatric evaluation were prepared when Powell was still an adolescent, specifically, when she was fourteen years old and in the eighth grade.

does reflect, though, that the Rivendell counselor assigned Powell a Global Assessment of Functioning ("GAF") score of forty-five, indicating serious symptoms or serious impairment in social, occupation, or school functioning. See Transcript at 200. Powell maintains that the ALJ failed to give adequate consideration to this GAF score, but her assertion is without merit for at least four reasons. First, he duly noted the GAF score, see Transcript at 19, and is assumed to have considered it. Second, assuming the ALJ did not give the GAF score adequate consideration, it was not assigned by a physician but by a counselor and is entitled to less weight. Third, notwithstanding the foregoing, a GAF score, by its very nature, is imprecise and is simply a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." See Jones v. Astrue, 619 F.3d 963, 973 (8th Cir. 2010) [internal quotation omitted]. Fourth, notwithstanding the imprecise nature of a GAF score, the counselor noted that Powell displayed symptoms of illegal drug use, and the ALJ could and did rely upon that observation in not giving the score more weight.

After Powell applied for supplement security income payments, she was seen by Hobby on September 15, 2011, for a consultative mental diagnostic evaluation. See Transcript at 208-219. The ALJ adequately summarized Hobby's findings and conclusions, see Transcript at 20, and it is not necessary to re-produce them, save to note the following findings and conclusions regarding the effects of Powell's mental impairments on her adaptive functioning:

> … In regard to ADLs, [Powell's] reported MENTAL impairment DOES

NOT appear to significantly impact an independent level of feeding herself, bathing, self-care, personal hygiene, and dressing.

…

… Limitations were noted in her current capacity to communicate and interact in a socially adequate manner due to anxiety. There were no discrepancies between alleged inadequacies and the interpersonal skill level demonstrated during the interview.

…

This person's grammar was adequate for communicating information in at least a basic work-like task. This individual did not seem to have any difficulty understanding instructions given by the examiner. There seemed to be a level of understanding that would enable the person to respond to normal instructions.

…

This individual has the ability to understand, carry out, and remember basic work-like tasks. This individual would probably respond adequately to work pressure in a work-like setting if she could physically do the work, she didn't have to work around a lot of people, and her depression and anxiety were stabilized.

…

No limitations were observed in this individual's ability to attend and sustain concentration on basic work-like tasks.

…

She was able to persist at the tasks during the interview. She should be able to mentally persist in appropriate skill level work-like tasks for an 8 hour day if she could physically do the work, she didn't have to work around a lot of people, and her depression and anxiety were stabilized, and she had some work experience.

…

The pace at which this person worked was a little slower than normal

and steady and appropriate for completing basic work-like tasks.

See Transcript at 216-217 (emphasis in original). Hobby assigned Powell a GAF score of between fifty-one and sixty, indicating moderate symptoms or moderate difficulty in social, occupation, or school functioning. See Transcript at 215. He was of the opinion that her highest GAF score during the past year was between sixty-one and seventy, indicating mild symptoms or some difficulty in social, occupational, or school functioning. See Transcript at 215.

Powell maintains that the ALJ accorded too much weight to Hobby's findings and conclusions. Although it is true that Hobby was only a consultative examiner, the ALJ could weigh the findings and conclusions as he did. They are consistent with Hobby's observations and testing of Powell, and the findings and conclusions are consistent with the history she reported, that is, her condition improved when she received appropriate medication and treatment.

Powell maintains that Hobby "did not indicate … he had read any of the records from other treating sources and had not treated [Powell] before or after in connection with her psychological issues." See Document 10 at 8. The Commissioner maintains, and the Court agrees, that the assertion is without merit because Hobby evaluated Powell before she sought treatment at PCA and there were therefore no treating records to review. Moreover, the very nature of a consultative examination is such that the examiner only sees the claimant one time.

Beginning on October 21, 2011, and continuing through at least May 2, 2012, Powell was seen for her mental impairments by a therapist and an advanced practice nurse at PCA. See Transcript at 234-235, 236-240, 241-244, 248-249, 250-251, 252-253, 254, 255-256, 257-258, 259.[2] The ALJ adequately summarized some of their findings and conclusions, see Transcript at 20, and it not necessary to re-produce them. Powell maintains that the ALJ accorded too little weight to the findings and conclusions made by the therapist and advanced practice nurse. Although it is true that he did not accord their findings and conclusions great weight, he did not discount them altogether. A fair reading of the ALJ's decision reflects that he adopted many of their findings and conclusions and could and did find that Powell's condition improved when she received appropriate medication and treatment. For instance, by the time of Powell's last visit, the therapist noted, in part, the following:

> … The client reports that she has been doing well. She and her fiancé discussed how she is able to control her anger much better now and talked about what a victory that is. The client returned her emotional regulation and progressive muscle relaxation homework. I applauded her commitment to her treatment.

See Transcript at 248.

On two separate occasions, the PCA professionals assigned Powell a GAF score of

---

[2] When Powell presented to PCA on October 21, 2011, the attending therapist noted the following: "The client was previously treated [at] PCA and at Rivendell. The client has received no treatment for the past 4 or 5 years. The client lost her disability benefits about 4 or 5 years ago and is trying to get her benefits back. She lost the benefits due to someone reporting she was buying drugs with her money." See Transcript at 241.

forty-five, see Transcript at 239, 243, and she maintains that adequate consideration was not given to those scores. Her assertion is without merit for at least two reasons. Notwithstanding the fact that GAF scores are imprecise and simply a subjective determination of a client's overall level of functioning, and the scores in question were not made by a physician, the ALJ noted at least one of the scores, see Transcript at 20, and is assumed to have considered it. Second, he could and did construe their findings and conclusions to support the proposition that her overall level of functioning improved when she received appropriate medication and treatment.[3]

Powell objects to the ALJ's observation that "[t]he evidence of record does not contain any treating source opinions as to the claimant's functional capacities or limitations." See Transcript at 21. She maintains that "neither the ALJ or any of the [state agency] examiners requested any such opinion from the treating sources ... See Document 10 at 8. The Commissioner correctly notes, though, that while "neither the ALJ nor the [state agency] requested opinions, ... neither were required to perform that task." See Document 11 at 10. Nevertheless, the Commissioner sent Powell for a consultative examination, and it was largely on the basis of Hobby's examination that the ALJ could and did assess Powell's residual functional capacity.

The ALJ also considered the non-medical evidence in assessing Powell's residual

---

[3] Powell maintains that "the GAF scores from several treating sources provide a basis for finding that the claimant's functional limitations render her disabled." See Document 10 at 13. The Court knows of no authority for the proposition that GAF scores alone will support a finding of disability. She has certainly not cited any such authority.

functional capacity. His evaluation of the non-medical evidence was not extensive, but it was adequate and is one of the acceptable evaluations permitted by the record. He considered her daily activities; the dosage and effectiveness of her medication for the effects of her mental impairments, specifically noting that the medication helps control her symptoms; and the functional restrictions caused by the impairments.

Powell objects to the continued reference to her seizure disorder, specifically noting that the impairment was a non-issue.[4] It is true that the ALJ made repeated reference to her seizure disorder, including considering it in evaluating it her residual functional capacity, but his erroneous reference to the impairment does not warrant overturning the assessment. There is substantial evidence on the record as a whole to support his findings notwithstanding his erroneous reference to the impairment.

Powell also objects to the ALJ's treatment of the testimony offered by Powell's mother.[5] The record reflects that he considered her testimony in accordance with Social Security Ruling 06-03p, and his decision to discount the testimony will not be overturned as his reasons for discounting it are supported by the record as a whole.

Powell offers a second reason why the ALJ's findings are not supported by

---

[4] At the beginning of the administrative hearing, Powell's attorney stated that [Powell's] seizures are really not a problem. They're controlled with medications. She hasn't had any seizures in quite some time. So, that's not necessarily the main issue today." See Transcript at 32.

[5] The ALJ noted that Powell and her mother have lived together virtually all of Powell's life. See Transcript at 19. The ALJ discounted the testimony of Powell's mother because "she does not have any professional expertise related to the claimant's impairments and has a personal relationship with the claimant that could lead directly or indirectly to a sympathetic or biased opinion as well as potential financial benefit by increasing the household income upon receipt of benefits." See Transcript at 19.

substantial evidence on the record as a whole. She maintains that the hypothetical question he posed to the vocational expert did not "correctly set forth [Powell's] limitations," see Document 10 at 10, specifically, her "severe psychological issues ...," see Document 10 at 11.

Testimony from a vocational expert is substantial evidence on the record as a whole only when "the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." See Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997). Thus, "the hypothetical question answered by a vocational expert must include all those impairments that are substantially supported by the record as a whole." See Id., 118 F.3d at 1278-1279.

The ALJ posed a hypothetical question to a vocational expert that incorporated the limitations caused by Powell's mental impairments. See Transcript at 42-43. The vocational expert testified that someone with Powell's limitations can work as a hospital/nursing home/housekeeping cleaner. See Transcript at 42-43. Powell's attorney then asked the vocational expert the following series of questions regarding GAF scores:

> Q. Mr. Elmore, if such an individual had a GAF score of 45 average, between 40 and 50 say, would that have any impact on her ability to work?
>
> A. How would this express itself in limitations relating to work? I'm not familiar with the GAF requirement.
>
> Q. You can't relate that GAF then to work activity?
>
> A. No, sir. We usually take them in terms of functional limitations. From–in this case–from a psychological aspect.

>   Q. All right. So, you just have no information.
>
>   A. I understand that's a low score, but I have no way to translate that into vocational.
>
>   Q. Well, let me give you an example. A GAF of 50 indicates serious symptoms or any serious impairment of social, occupational, or school functioning. So, anything less than that gets worse. Would that help you any?
>
>   A. It does. If we have serious interaction problems, that's going to translate into dealing with supervisors and coworkers. And if we do have a severe limitation in those areas, work even at the unskilled level would not be possible.

<u>See</u> Transcript at 43-44. The ALJ disregarded the vocational expert's testimony in response to the line of questioning by Powell's attorney and adopted the vocational expert's testimony that the hypothetical individual can work as a cleaner.

The ALJ did not err in crafting the question to the vocational expert. The ALJ's question was adequately phrased as it captured the concrete consequences of Powell's deficiencies. The ALJ could and did disregard the line of questioning regarding Powell's GAF scores because he could and did find that she does not have serious symptoms or serious impairment of social, occupation, or school functioning.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Powell's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___9___ day of February, 2015.

_____
UNITED STATES MAGISTRATE JUDGE